IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DARRELL LEE BAILEY, SR., ) | |
| ) | Civil Action No. 3:08-141-HMH-JRM |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| LT. KITCHEN; AND ) | |
| MCO S. MCCLANAHAN, ) | |
| ) | |
| Defendants ) | |
| ) | |
| _____ ) | |

Plaintiff, Darrell Lee Bailey, Sr., filed this action on January 16, 2008.[1] At the time of the alleged incidents, Plaintiff was a pretrial detainee at the Newberry County Detention Center ("NCDC"). Defendants, Lt. Kitchen ("Kitchen") and MCO S. McClanahan ("McClanahan"), are employees of the NCDC. On June 2, 2008, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on June 4, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on July 21, 2008.

**DISCUSSION**

Plaintiff was detained at the NCDC beginning on October 23, 2007, awaiting prosecution on charges of Attempted Grand Larceny, Breaking into an Automobile, Contributing to the Delinquency of a Minor, Unlawful Carrying of a Pistol, Possession of Tools for Criminal Use, and Criminal

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

Conspiracy. See Kitchen Aff., Ex. A. Plaintiff's remaining allegations[2] concern his living conditions at NCDC and his access to the courts. He requests injunctive relief and two million dollars.[3] Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to establish a Fourteenth Amendment violation as to his conditions of confinement; (2) Plaintiff fails to show a denial of access to the courts; (3) Plaintiff fails to demonstrate any injury; (4) there is no evidence of the personal involvement by these Defendants in the alleged deprivations and no demonstration of an unconstitutional policy, custom, or practice; (5) Plaintiff has not exhausted his available administrative remedies;[4] (6) Plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA") as there is no evidence he suffered any physical injury as a result of the challenged conditions; (7) Defendants are entitled to qualified immunity; (8) Defendants are entitled to Eleventh Amendment immunity; and (9) Plaintiff's complaint is patently frivolous and should be dismissed as a matter of law and count as a strike pursuant to the provisions of the PLRA.

---

[2]Plaintiff also asserted claims against Charles Verner (Plaintiff's public defender) and Magistrate Barry Koon. Those Defendants were dismissed from this action on March 6, 2008. See Doc. 18.

[3]Any claims for injunctive relief are moot, as Plaintiff is no longer a detainee at the NCDC (see Doc. 46 - address change indicating Plaintiff's transfer to Greenwood County Detention Center, Doc. 47- address change providing a post office box as an address). See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief.").

[4]"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.
    It is unclear from the materials presented whether Plaintiff has exhausted his available administrative remedies. In his complaint, Plaintiff provides that he filed a grievance and received a final answer. Complaint at 2. Kitchen states that Plaintiff did not make any request to staff regarding these issues. Kitchen Aff., Para. 35.

      **1.**      **Conditions of Confinement**

Plaintiff appears to allege that his living conditions at the NCDC violated his constitutional rights. Specifically, he claims that the showers are unsanitary, have mold and mildew, have peeling paint, and the water is too hot sometimes and ice cold at other times; there is no heat in the winter, there is no weather stripping or calking on the windows, and cold air comes in from the outside; there are sewer drains in sleeping, dining, and recreation areas, water from showers has to go through the middle of the floor to the drains, and one inmate slipped and fell in the water; there are spiders and bugs in the facility; the food served does not contain enough meat and is insufficient as to portions; and there is no twenty-four hour security and a fight occurred at the detention center one night. The NCDC Defendants deny Plaintiff's accusations and contend that he fails to show that he was subjected to any constitutional deprivation. They contend that Plaintiff fails to show that he suffered any injury from the alleged conditions.

Allegations of deprivations of pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions...the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

(Citations omitted). However, the due process rights of detainees are at least coextensive with Eighth Amendment rights of convicted prisoners, and perhaps greater. Whisenant v. Yuam, 739 F.2d 160

(4th Cir. 1984); Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978), cert. denied, Moffit v. Loe, 446 U.S. 928 (1980).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Thus, it must be determined whether the conditions and/or treatment received by plaintiff amounted to punishment. Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538.

Kitchen states that inmates in the NCDC are assigned to regularly clean the institution including the showers and are provided cleaning supplies; the maintenance program is effective in maintaining acceptable and safe levels of sanitation within the detention center; and some paint in the showers has peeled off the walls as a result of excessive pressure washing, but does not present any heath or safety risk. He states that sink problems occurs as a result of natural acts or vandalism, but repairs are made as soon as practicable. Kitchen states that central drains are designed to remove liquids to sewers and are necessary for safety and sanitation. He states that detention center officers are assigned to all areas of the NCDC twenty-four hours a day and there are also security cameras. Kitchen provides that the NCDC employs an outside pest control company that sprays regularly. He states that the temperature is regulated by a centralized system set at 72 degrees year round and water temperature is also maintained by a central system. Kitchen further states that there is no record that Plaintiff was ever assaulted and that his medical records only show complaints concerning sinus or upper respiratory congestion. See Kitchen Aff., Paras. 12-32, 36-37.

4

Plaintiff fails to show any expressed intent on the part of Defendants to punish him. Further, Plaintiff fails to show that his living conditions caused him anything more than de minimis injuries. A de minimis injury does not violate the Fourteenth Amendment. See Ingraham, 430 U.S. at 674 ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); see also Riley v. Dorton, 115 F.3d 1159, 1167-1168 (4th Cir. 1997)(en banc)(any injury that plaintiff suffered as a result of the alleged use of excessive force against him must have been de minimis at best because the plaintiff saw medical personnel on numerous occasions for various injuries and never mentioned the alleged constitutional violation as the source of any of his injuries or complaints),cert. denied, 520 U.S. 1030 (1997); Westmoreland v. Brown, 883 F. Supp. 67, 76 (E.D.Va. 1995)("a particular condition constitutes punishment only where it causes physical or mental injury"). Review of Plaintiff's medical records reveals no indication of any problems due to the alleged conditions of confinement. See Kitchen Aff., Ex. A.[5]

Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." See French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, Owens v. French, 479 U.S. 817 (1986). Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. Divers v. Department of Corrs., 921 F.2d 191, 196 (8th Cir. 1990); see also Madyun v. Thompson, 657 F.2d 868, 874-75 (7th Cir. 1981)(allegation that food served to segregated prisoners was cold and not on the menu served to

---

[5]In his opposition memorandum, Plaintiff appears to complain for the first time that detention officers (instead of medical personnel) hand out medications at the NCDC. Even if this claim is properly before the court, Plaintiff fails to show that this violated his constitutional rights as he has not shown that defendants were deliberately indifferent to any of his serious medical needs. See Estelle v. Gamble, 429 U.S. 97 (1976)

5

general prison population was insufficient to state an Eighth Amendment violation); Hoitt v. Vitek, 497 F.2d 598, 601 (1st Cir. 1974)(prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); Prophete v. Gilless, 869 F. Supp. 537 (W.D. Tenn. 1994)(food which was cold by the time it was served did not constitute cruel and unusual punishment).

Kitchen states that it is his understanding that the menus and food provided by NCDC to detainees is adequate and healthful and that DHEC regularly inspects the kitchen facilities and received scores in the 98-100 percentile range. Typical menus have been provided indicating that three meals a day, with a variety of foods (although sometimes meatless), are served to detainees. Kitchen Aff., Paras. 13-14, 16, and Ex. B. Plaintiff has not shown any injury from the food service at LCDC. In his opposition memorandum, Plaintiff appears to assert for the first time that he has been discriminated against because inmates of the South Carolina Department of Corrections receive better food than NCDC detainees. He may be attempting to assert an equal protection claim. Even if this claim is properly before the court, it fails as Plaintiff fails to show that similarly-situated persons were treated differently by a governmental entity or that the unequal treatment was the result of intentional or purposeful discrimination.[6]

### 2. Access to the Courts

Plaintiff appears to allege that his right of access to the courts was violated because his legal mail was opened and read outside of his presence, there is no law library at the NCDC, and

---

[6] An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001).

there is no notary at the NCDC. Defendants contend that Plaintiff fails to show that he was denied access to the courts because he has not shown that he suffered an actual injury, short-term facilities are not required to maintain law libraries, Plaintiff has appointed counsel in his criminal case, and Plaintiff has been able to file numerous pleading in this case and in other cases.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Plaintiff fails to show that his access to the courts has been violated as he has not shown any actual injury such as the late filing of a court document or the dismissal of an otherwise meritorious claim resulting from Defendants' alleged actions. See Bounds v. Smith and Lewis v. Casey, supra. Kitchen states Plaintiff was appointed a public defender to represent him on criminal charges. Kitchen Aff., Para. 8. Plaintiff appears to admit that he was assigned a public defender. See Plaintiff's Opposition Memorandum at 2.

Regulations affecting incoming mail are valid if they are reasonably related to a legitimate penological interest. See Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987). Prison officials are given considerable deference in regulating the delicate balance between prison order and the demands of outsiders who seek to enter the prison environment. Thornburgh, supra. Prison officials may open mail from an attorney to a prisoner in the prisoner's presence in order to protect against contraband. Wolff v. McDonnell, 418 U.S. 539 (1974); see Crowe v. Leeke, 550 F.2d 184 (4th Cir. 1977). Further, no constitutional violation arises if mail which is not properly marked (that the legal sender is specifically identified and the mail is marked confidential) is opened outside the inmate's presence. United States v. Stotts, 925 F.2d 83 (4th Cir. 1991).

Plaintiff fails to show that his constitutional rights were violated by the handling of his incoming mail. Defendant McClanahan states that she is the person responsible for reviewing inmate mail that enters the NCDC. She states that the purpose of the inspection is to prevent the introduction of contraband, weapons, and other materials that represent a threat to security and safety. McClanahan states that the incoming mail is physically opened to ensure that there are no prohibited items because individuals often attempt to smuggle items into the jail through the mail system. She states that she does not have time to read the correspondence and merely ensures that no prohibited items are in the mail. McClanahan provides that mail which is clearly identified and marked as "legal mail" and has obviously come from a law firm or attorney is not opened outside of the presence of the addressed inmate. She states that mail marked "legal mail" that does not appear to be from a lawyer or law firm may still be opened and inspected prior to being given to the inmate because merely marking the envelope as "legal mail" does not in fact mean that it is such. Additionally, McClanahan states that she has no recollection of reviewing or inspecting any specific items sent to Plaintiff and is not aware of any confidential communications between Plaintiff and any

lawyer or legal entity. McClanahan Aff., Paras. 6-14. Plaintiff has provided nothing to show that properly marked "legal mail" was opened outside of his presence.

### 3. Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.

In Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd mem., 878 F.2d 379 (4th Cir. 1989)[Table], the court addressed whether South Carolina sheriffs were state or county officials. The court applied South Carolina common law principles of the master and servant relationship and concluded that sheriffs are state officials. Id. at 954-955. The Fourth Circuit concluded, in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), that the Greenville County sheriff, in his capacity as a state official, was immune from suit for monetary damages under § 1983. Id. at 1332. Further, in Gulledge, the district court concluded that deputy sheriffs are agents of the sheriff and therefore under state, not county, control. Gulledge, supra; see also Heath v. Aiken County, 368 S.E.2d 904 (S.C. 1988). In Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992), the South Carolina Supreme Court cited Gulledge with approval and specifically held that South Carolina sheriffs and their deputies are state officials for § 1983 purposes. Defendants provide that they are deputies of the Sheriff of Newberry County. See McClanahan Aff., Para. 3; Kitchen Aff., Para. 3. Thus, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  "In determining whether the specific right allegedly violated was

10

> 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## MOTION FOR A TEMPORARY RESTRAINING ORDER

On April 8, 2008, Plaintiff filed a motion for a temporary restraining order. He alleges that his legal rights are being violated because Defendants open and read his legal mail without his being present and sometimes hold his legal mail for two to three days at a time. Defendants contend that Plaintiff's motion should be denied because Plaintiff fails to demonstrate or discuss the proof necessary to obtain injunctive relief.

The undersigned construes this as a motion for preliminary injunctive relief. The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c) the injury to defendant if an injunction is issued; and
>
> (d) the public interest.

11

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff's motion should be denied because Plaintiff is unlikely to be successful in the underlying dispute between the parties and is unlikely to suffer irreparable injury if interim relief is denied. Plaintiff has not alleged any injury from Defendants' alleged actions. As discussed above, it is unlikely that Plaintiff will be successful on his underlying claims.

## CONCLUSION

Based on review of the record, it is recommended that Plaintiff's motion for a TRO (Doc. 27) be **denied**. It is also recommended that Defendants' motion for summary judgment (Doc. 37) be

**granted**.

                                Respectfully submitted,

                                Joseph R. McCrorey
                                United States Magistrate Judge

December 16, 2008
Columbia, South Carolina

    **The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).